

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 30, 2018

**BY ECF**
The Honorable P. Kevin Castel
Southern District of New York
500 Pearl Street Square
New York, New York 10007

      Re:    *United States v. Andrew Cook*, S1 17 Cr. 147 (PKC)

Dear Judge Castel:

      The Government respectfully submits this letter in connection with the sentencing of Andrew Cook (the "defendant"), currently scheduled for August 1, 2018 at 12:15 p.m. The parties stipulated that the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 41 to 51 months' imprisonment (the "Guidelines Range")   For the reasons set forth below, the Government respectfully submits that the Court should impose a sentence of 60 months, the statutory maximum sentence.

**A.  Factual Background**

      **1.      The Offense Conduct**

      The defendant operated a designer drug laboratory out of his residence and used the internet to peddle his dangerous products throughout the country. On or about April 10, 2016, law enforcement received reports of an individual suffering a seizure at the defendant's residence. Law enforcement responded to the scene, administered medical care, and transported the defendant to the hospital. (PSR ¶¶10, 12). While searching the scene in hopes of identifying the cause of the defendant's seizure, law enforcement discovered the defendant's drug laboratory. (PSR ¶¶11 – 12). Law enforcement subsequently seized laboratory equipment: pipettes; masks; beakers; pill presses; bench notes; and other laboratory equipment. (PSR ¶14). Law enforcement seized business records associated with the narcotics laboratory:  invoices and shipping supplies. (*Id.*).  And law enforcement recovered specialized drugs:  approximately 395 grams of methoxetamine ("MXE") and plastic tubs containing analogues of various benzodiazepines. (PSR ¶¶ 14 – 15).

      Law enforcement also recovered electronic devices detailing the scope of the conduct. The defendant operated a website, DownLowLabs from which he sold MXE and analogues of benzodiazepines to customers nationwide. (PSR ¶19). The defendant advertised that the products were "Not for Human Consumption" and were "Research Chemicals," when in reality the products were intended for human consumption and intended to skirt the law prohibiting the sale of analogue substances. (PSR ¶¶17, 20).

### 2. Post-Arrest Conduct

Following the search of his residence, the defendant was arrested by authorities in New Jersey and detained in connection with the case. While in custody, the defendant met with a family friend and requested that the friend delete invoices from his website. (PSR ¶20). The family friend deleted over 1,500 invoices pertaining to the defendant's distribution activities. (PSR ¶22). The defendant was subsequently charged by federal Complaint on November 22, 2016 for his involvement in the distribution of MXE and the case was transferred to the Southern District of New York.

While in federal custody during the pendency of his case, the defendant engaged in multiple discussions regarding his desire to murder the Assistant United States Attorney (the "AUSA") responsible for handling his prosecution. (PSR ¶38). The defendant discussed with a specific inmate ("Inmate-1") the feasibility of such a murder. When Inmate-1 noted that Inmate-1 had connections outside of jail who might assist in the murder, the defendant offered to pay Inmate-1 money for the murder. (PSR ¶39).[1] The defendant also had conversations with another inmate ("Inmate-2") regarding the murder of the AUSA, but Inmate-2 declined to assist the defendant. (PSR ¶41). After learning of these conversations, multiple inmates reported the substance of the conversations to the Government for investigation. (PSR ¶42).

### B. The Plea Agreement and Probation's Recommendation

On December 18, 2017, the defendant pleaded guilty pursuant to a plea agreement to a superseding Information, which Information charged him with one count of conspiring to distribute a misbranded drug. As stipulated in the plea agreement, and as calculated by the Probation Office, the defendant's Guidelines Range is 41 to 51 months.

The Base Offense level for the offense is determined by application of guideline §2B1.1. Section 2B1.1 contains an initial offense level of six, which is increased by an additional six points resulting from the loss amount as determined by the documented sales of the MXE. Two points are added under USSG § 2B1.1(b)(2)(A)(ii) because the offense was committed through mass marketing (the defendant's website); two levels are added under USSG § 2B1.1(b)(10)(C) because the offense involved the use of sophisticated means; and two levels are added under USSG § 2B1.1(b)(15)(A), because the offense involved the risk of serious bodily injury (resulting from the distribution of unsafe and untested chemicals designed to have psychopharmalogical effects). In addition, the defendant used a special skill in the facilitation and commission of the offense (stemming from his manufacture of the designer drugs distributed), which results in an increase of two levels under USSG §3B1.3. Finally, because the defendant obstructed justice in connection with the offense (stemming from the deletion of the invoices), two additional points are added under U.S.S.G. §3C1.1. The resulting offense level is 22.

---

[1] The defendant previously paid Inmate-1 money to obtain information that the defendant hoped could be used to obtain a cooperation agreement with the Government. (PSR ¶40).

The Probation Office recommends a sentence of 51 months imprisonment, which is at the top of the Guidelines Range.

## C. The Defendant's Submission and Recommendation

The defendant's submission, dated July 24, 2018, argues that the defendant should be sentenced to time served, ECF No. 69 (the "Def.'s Submission"), which represents approximately 20 months incarceration  The defendant argues that the lowest possible sentence is warranted because of the defendant's history of addiction and his purported low likelihood of recidivism.

## D. Discussion

### 1. Applicable Law

The Government submits that a sentence at the statutory maximum is appropriate.  As the Court is well aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.  After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law.  *Id.* at 50 & n.6.

### 2. The Statutory Maximum Sentence Is Appropriate

The Government respectfully submits that the defendant's conduct and circumstances warrant a sentence of sixty months imprisonment.

#### a. *The Offense Conduct*

The defendant distributed dangerous substances throughout the United States.  A sentence of sixty months would reflect the serious nature of the offense, promote respect for the law, provide just punishment, and help deter the defendant and others from committing similar offenses.  Several features of the instant offense underscore the need for a serious term of imprisonment.

*First*, the offense conduct for which the defendant pleaded guilty is both serious and dangerous.  The defendant sold homemade pharmaceuticals and designer drugs to individuals throughout the United States.[2]  The drugs were not examined by the Food and Drug

---

[2] The defendant disputes the characterization that MXE is analogous to PCE, but admits that MXE is analogous to a different controlled substance—Ketamine. (Def's Submission at 7). Ketamine is a Schedule III substance under the Controlled Substances Act and is a dissociative anesthetic with hallucinogenic effects.

Administration; the drugs were not regulated to ensure their safety or proper manufacturing; and the drugs were not manufactured in accordance with laboratory safety measures. Instead, the defendant imported the MXE from China, manufactured the benzodiazepine analogues in his apartment, and distributed the drugs nationwide. The defendant structured his activities in an attempt to avoid federal law and oversight. Such brazen activity is highly dangerous not just because of the substances themselves (substances that mimic the effects of Controlled Substances), but also because of the risk of adulteration and the distribution of a totally unknown substance.

*Second*, a substantial term of imprisonment is warranted to reflect the sophistication of the defendant's drug operation. The instant offense was neither a crime of passion nor the result of a single lapse in judgment. Rather, the defendant used his facility with chemistry and the internet to operate a nation-wide business that marketed designer drugs, accepted orders, manufactured the substances, and distributed the drugs nationwide. The operation was sophisticated and national in scope.

*Third*, a sentence at the statutory maximum will promote respect for the law and further the goal of general deterrence. The defendant attempted to operate at the grey area of legality, manufacturing and distributing designer analogue substances. The defendant's goal was to distribute substances not covered by federal law, but that otherwise delivered identical effects to controlled substances. The Government has reviewed internet forums discussing the case at length and which show that members of the public have followed the defendant's arrest and prosecution closely. A lengthy sentence is necessary to send a message that attempts to evade the federal narcotics law will be met with serious punishment.

### b. *Individual Characteristics of the Defendant and Related Conduct*

The individual characteristics of the defendant likewise warrant a sentence at the statutory maximum. The defendant's obstruction strikes at the very heart of the criminal justice system. The defendant ordered the destruction of evidence and threatened the life of the Assistant United States Attorney prosecuting his case. Civilian law enforcement personnel work to further the impartial administration of justice, focusing on protecting communities and the public. Yet the defendant took affirmative steps to arrange for the AUSA's murder, precisely because the AUSA was doing her job. The threats made by the defendant must be fully punished not only to deter him, but to deter others who believe such conduct will be effective in thwarting prosecutions. Defendants must know that threats against criminal justice personnel will results in swift and severe consequences.

The defense submission argues that the defendant is "remorseful for his conduct," including his violation of "prison rules," and that leniency is appropriate because of the defendant's significant history of drug abuse and experimentation. (Def.'s Submission at 9). The defendant did not merely violate "prison rules," the defendant took affirmative steps to obstruct justice. And the defendant's threats were not aberrational. Rather, they reflect a broad pattern of manipulation and are consistent with both the offense conduct and the defendant's conduct following his arrest. The defendant has repeatedly sought to subvert the criminal justice system. The defendant sold designer drugs intended to operate at the boundaries of the law; the defendant ordered evidence destroyed following his arrest; and the defendant attempted to pay another inmate for information

he could use as a bargaining chip for a U.S.S.G. §5K1.1 letter. The defendant's conduct is serious and warrants serious punishment.

**E.  Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose the statutory maximum sentence of 60 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Michael C. McGinnis
Assistant United States Attorneys
(212) 637-2305

cc:   All Counsel of Record (via ECF)